UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| PETER CONSTANTINO,<br><br>　　　　Plaintiff<br><br>　　v.<br><br>SHAWS SUPERMARKETS INC.,<br><br>　　　　Defendant | No. 2:20-cv-00387-LEW |

## ORDER ON MOTION TO DISMISS

In this removed action, Peter Constantino ("Constantino" or "Plaintiff") contends Shaw's Supermarkets, Inc. ("Shaw's" or "Defendant") makes its drivers perform work without receiving pay, in violation of Maine wage law. He seeks to pursue his claim as a class action. Shaw's removed the action to this Court, citing diversity and "complete preemption" in support of subject matter jurisdiction.

The matter is before the Court on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Motion, ECF No. 11).[1] Defendant argues Plaintiff's state-law wage claim challenges the fairness of the Collective Bargaining Agreement and is, therefore, preempted by the Labor Management Relations Act, and that the claim is barred, in any event, by a prior final arbitration award addressed to the very issue Plaintiff advances here.

---

[1] Plaintiff filed his First Amended Class Action Complaint in response to Defendant's first motion to dismiss. Because the FACAC supersedes the original complaint, the initial motion to dismiss (ECF No. 8) is moot.

Finally, Defendant argues the state law claim is preempted by the Federal Aviation Administration Authorization Act.

## BACKGROUND

A plaintiff's allegations are accepted as true for purposes of a motion to dismiss. In addition to the allegations found within the four corners of the complaint, the Court may consider a document referenced in the complaint that provides the backdrop for the controversy at hand. *Simmons v. Galvin*, 575 F.3d 24, 30 n.5 (1st Cir. 2009). Here, the relevant document is an agreement entitled Collective Bargaining Agreement Between Teamsters Local Union No. 340 Affiliated with the International Brotherhood of Teamsters and Clifford W. Perham, Inc., a Subsidiary of Shaw's Supermarkets Inc. (the "CBA"). The Court also may consider facts that justify judicial notice, including the fact of a prior arbitral award, which can be "accurately and readily determined from sources whose accuracy cannot reasonably be disputed." Fed. R. Evid. 201(b)(2), (c). *See, e.g.*, *Anyachebelu v. Brooklyn Hosp. Ctr.*, No. 16-cv-3159, 2017 WL 9511073, at *6 (July 20, 2017) (mag. j. recommended decision, collecting cases), *adopted*, 2017 WL 4233033 (E.D.N.Y Sept. 22, 2017).

Plaintiff Constantino is employed by Defendant Shaw's as a driver. Under the CBA, drivers typically receive pay based on mileage. Complaint ¶ 14. When performing their work, drivers often engage in related activities like pre- and post-trip inspections, inventory and delivery tasks like checking pallet tags, and arranging and securing their loads. *Id.* ¶ 15. The mileage rate is either meant to provide compensation for these non-driving related activities or it is not. According to the arbitrator, it is. Driver downtime associated with

"store unloading hours" is paid hourly. Additionally, when a driver completes fewer than 315 miles in a workday, the driver is compensated on an hourly basis, unless the sum of the per mile rate and the per hour rate for store unloading hours is greater. CBA Article 15, p. 22.

Constantino's lawsuit is founded on the following allegations, all of which state legal conclusions rather than "facts." Constantino alleges drivers do not "earn any money whatsoever" for the related activities. *Id.* ¶ 17. He illustrates the logic of his claim with the example of two drivers who drive the same distance and receive the same pay yet work different hours. *Id.* ¶ 18. Constantino claims that the worker who spends more time on non-driving, related tasks spends that additional time working "without monetary compensation." *Id.* ¶ 19. [2]

Constantino and other drivers grieved this issue in 2018. *Id.* ¶ 20. The grievance was unsuccessful. Motion Ex. B, Decision and Award in the Matter of Teamsters Local Union No. 340 v. Clifford W. Perham, Inc., AAA Case No. 01-19-000-3459 (Jan. 24, 2020).

Now, through this action filed in state court in or about September 2020, Constantino claims the wage provisions of the CBA are "an unfair agreement" that requires drivers to work without compensation, in violation of 26 M.R.S. § 629; that Shaw's failed to provide full payment for all work in a timely fashion, in violation of 26 M.R.S. § 621-A; and that the liquidated damage multiplier and other penalties of 26 M.R.S. § 626-A

---

[2] Constantino's allegation of unpaid work is a legal conclusion. A court is not required to accept a legal conclusion as true when making a ruling on a motion to dismiss. *Wood v. Moss*, 572 U.S. 744, 755 n.5 (2014); *Starr Surplus Lines Ins. Co. v. Mountaire Farms Inc.*, 920 F.3d 111, 114 (1st Cir. 2019). Ordinarily, a court would look elsewhere for facts to inform the merits inquiry, including at the CBA and, if that proves inadequate, the bargaining process that produced it.

should enhance any recovery. *Id.* ¶ 25, 45-49. Of note, Constantino's allegations concerning 26 M.R.S. §§ 621-A and 626-A are derivative of his § 629 claim. In other words, absent a showing of entitlement to relief under the "unfair agreement" prohibition, Constantino cannot show a separate violation of the § 621-A timing rule or grounds to access the additional remedies found in § 626-A.

## DISCUSSION

A. **SUBJECT MATTER JURISDICTION**

The United States District Courts are courts of limited jurisdiction and, as such, must ensure that the actions brought before them can be hung on one or more jurisdictional hooks. In the Notice of Removal, Shaw's justified removal by citing the diversity jurisdiction statute, 28 U.S.C. § 1332, as well as the doctrine of "complete preemption," a kind of federal question jurisdiction that can justify removal based on 28 U.S.C. § 1331. Given that Shaw's invoked the diversity statute, it appears that the resolution of the federal question / complete preemption doctrine lacks jurisdictional significance in terms of the propriety of removal.

In any event, where the case for complete preemption is plausible, in effect a state law cause of action is treated as arising under federal law for jurisdictional purposes, at least for purposes of removal to evaluate the complete preemption question. *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 17-18 (1st Cir. 2018). That standard is met here. *Id.* at 18 ("Federal subject-matter jurisdiction exists as long as—at the time of removal—there was a seemingly valid or genuine argument that adjudication of the plaintiff's claim would require construction of the CBA."); *Flibotte v. Pennsylvania Truck*

4

*Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997) ("In practice, this test boils down to whether the asserted state-law claim plausibly can be said to depend upon the meaning of one or more provisions within the collective bargaining agreement."). Implicit in this area of jurisprudence is the idea that a state law claim will be plausibly preempted for removal purposes, yet not, in the final analysis, so conflict-preempted to prevent a judicial assessment of the merits of the state law controversy.

**B.     LMRA COMPLETE PREEMPTION**

The Labor Management Relations Act, 29 U.S.C. § 185(a),[3] completely preempts state law employment claims not only when the claims "are predicated on rights created under CBAs," but also when the claims require interpretation (rather than mere consultation) of a CBA to resolve the merits. *Lawless*, 894 F.3d at 18 ("In the last analysis, state-law claims that require 'only consultation with the CBA,' as opposed to 'actual interpretation' of the CBA, 'should not be extinguished.'" (quoting *Adames v. Exec. Airlines, Inc.*, 258 F.3d 7, 12 (1st Cir. 2001)).

At first blush, Constantino's wage claim fits within this rubric because it calls into question whether the driver compensation provisions of the CBA take into consideration the need to provide pay for those non-driving activities described by Constantino that are not compensated on an hourly basis. *See id.* at 18 & n.2 (1st Cir. 2018). This inquiry

---

[3] "[T]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (internal quotation marks omitted). Note that the United States District Courts' jurisdiction under the LMRA is not exclusive. 29 U.S.C. § 185(a). "Because a successful preemption defense under the LMRA would dictate a change in the choice of law, but not a change in forum, the preemption defense is not jurisdictional and can be waived." *Fryer v. A.S.A.P. Fire & Safety Corp.*, 658 F.3d 85, 90 (1st Cir. 2011).

presents a plausible concern that a court, in order to adjudicate Constantino's claim, would have to do more than merely consult the CBA. *See id.* at 18-19.

When applicable, complete preemption can require that a state law claim be asserted as a claim arising under the CBA, resulting in dismissal of the state law claim unless the plaintiff amends, or the court recasts, the state law claim as a federal claim. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). And because CBAs almost invariably include mandatory and binding arbitration provisions, the complete preemption defense is usually back stopped by a motion to compel arbitration or, when as here arbitration has already occurred, a motion to dismiss. *See, e.g., Rueli v. Baystate Health, Inc.*, 835 F.3d 53, 65 (1st Cir. 2016); *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 6 (1st Cir. 2012).

Shaw's argues that the CBA-mandated grievance procedure, which culminated in a final and binding arbitral award, resolves the controversy alleged in the complaint once and for all. Motion at 5-11. Constantino argues the grievance process and arbitral award are immaterial to this action because the Maine statute that prohibits work without pay "is minimum standards legislation that nullifies any agreement to the contrary," Response at 1, and because, as he sees it, the fact that two drivers could be paid the same amount for different amounts of work somehow proves the case. *Id.* at 1-3. Constantino suggests that "any contract or agreement between the parties is irrelevant" to his claim because, as a matter of Maine law, no driver can ever be compensated for non-driving tasks using a mileage rate. *Id.* at 4.

Constantino's anti-mileage-rate argument has been accepted by at least one district

court in California. In *Cardenas v. McLane Foodservices*, *Inc.*, 796 F. Supp. 2d 1246 (C.D. Cal. 2011), the court reasoned that the intention of the parties to use mileage to compensate for driving-related tasks was irrelevant to the issue of whether their agreement was permitted by state law. The *Cardenas* Court went on to rule that an employer and employee could never agree to a mileage-based payment structure without violating California law, even if they arrived at an agreement in which they mutually understood that the pay rate was adequate to compensate for non-driving tasks. That peculiar view has been criticized, not surprisingly, and does not appear to have gained traction in the Ninth Circuit. *Ayala v. U.S Xpress Enterprises*, *Inc.*, No. 16-cv-137, 2020 WL 3071707, at *11 (C.D. Cal. June 9, 2020), *motion to certify appeal granted*, 2020 WL 4760177 (C.D. Cal. July 10, 2020).

Much more sensible is the Eighth Circuit's observation in *Hensley v. MacMillan Bloedel Containers*, *Inc.*, that the intent and understanding of the contracting parties is a fact worthy of consideration. 786 F.2d 353, 355-56 (8th Cir. 1986). Indeed, there can be little doubt that the Maine Supreme Judicial Court would approach a compensation dispute from a similar angle. *See*, *e.g.*, *Burnell v. Town of Kingfield*, 686 A.2d 1072, 1074 (Me. 1996) (addressing employment contract dispute and observing that the "paramount principle in construction of contracts is to give effect to intention of parties as gathered from the agreement's language and the circumstances pursuant to which it was made" (citing *Baybutt Const. Corp. v. Commercial Union Ins. Co.*, 455 A.2d 914, 919 (Me.1983)).[4] I do not see how uncritical application of the *Cardenas* approach advocated

---

[4] Constantino also cites *Hill v. Xerox Business Services*, *LLC*, 426 P.3d 703 (Wash. 2018). In *Hill*, the Washington Supreme Court addressed the certified question whether Xerox's call center compensation plan
*(continued next page)*

7

by Constantino could be viewed as anything other than judicial activism.

Ultimately, one question presented in this case is whether Shaw's mileage-based compensation scheme, a product of collective bargaining, if understood by the bargaining parties to afford fair compensation for driving-related but not actual driving time, would influence the merits of the state law dispute. This statement of the issue is like the statement offered by Constantino (*i.e.*, that the only issue is "whether the employment scheme is legal under 26 M.R.S. § 629, Response at 13), but it focuses on a potentially material issue of fact. Ordinarily, but for the CBA/arbitration overlay, a court of law would treat this as a genuine issue of fact before then moving on to evaluate the legality of the agreement.

However, given the CBA/arbitration overlay, what ordinarily would have been a process of interpretation has become a process of consultation. I arrive at that conclusion through a somewhat circuitous path.

### 1. *Rueli*

In *Rueli v. Baystate Health*, *Inc.*, the First Circuit created a framework in which hourly workers should be able to evade complete preemption under the LMRA if they are "able to vindicate their claims with proof of [the employer's] actual knowledge of their unpaid hours," which, at the pleading stage, would simply require that plaintiffs allege a

---

came within a state labor regulation that authorized piece-work compensation methods in which high-production hours average out with low-production hours to arrive at a net compensation level at or above the minimum wage. Critically, the inquiry was whether the particulars of the compensation scheme used by Xerox resulted in some workers being paid less than the applicable minimum wage, where the certifying district court had already ruled at summary judgment that Xerox's compensation methodology was, in fact, time-based ("production minutes") rather than piece-based. *Id*. at 756-58. The Washington Supreme Court resolved the very narrow certified question. It held that the production minutes system did not fit into the regulatory scheme authorizing piece-work compensation. What this means for Constantino and other Shaw's drivers is a mystery. The case offers no assistance.

factual basis "for actual knowledge of all of the unpaid hours worked." *Rueli v. Baystate Health, Inc.*, 835 F.3d 53, 62 (1st Cir. 2016) (emphasis in original). But because the *Rueli* plaintiffs did not allege a basis for the employer's actual knowledge of the entire range of allegedly uncompensated work hours, the Court decided it would be necessary to look to the CBA to understand whether the employer would have had reason to anticipate that work was being performed without pay given certain "permission and management rights provisions" in the CBA that informed that very inquiry. *Id.* at 64.

Constantino cites this line-drawing and propounds that his state law wage claim must evade preemption under the *Rueli* rule because he has alleged (and it is beyond dispute) that Shaw's knows he does certain work other than driving, not all of which is compensated on an hourly basis. Response at 13-14. The line drawing in *Rueli* is perplexing and, depending on how it is interpreted, could either favor or disfavor Constantino's cause. It could favor Constantino because, as alleged, his cause relies on the absence of a factual dispute. On the other hand, it could disfavor Constantino because a state court intent on arriving at a logical application of the wage statute to this particular circumstance ordinarily would want to know something about the intent and understanding of the bargaining parties who produced the CBA, and, at least conceivably, that inquiry may or may not give rise to disputed issues of fact.

Ultimately, I am not convinced that *Rueli* directs the outcome in this case. The *Rueli* Court considered a claim for unpaid hours in the context of an hourly-rate compensation plan. The Court was at pains to explain why an hourly worker complaining of unpaid hours of work should be barred access to remedies other than CBA remedies. Here, on the other

9

hand, we consider a claim that arises out of the mileage-based component of a larger compensation plan, a scenario that asks not whether the employer knew the extent of the work employees engaged in, but whether the parties to the CBA all understood that the mileage-based compensation scheme would provide fair and adequate compensation for certain non-driving tasks. In short, *Rueli* is not on point.

### 2. Plaintiff is the Master of His Complaint

Shaw's argues that the presumptive relevance of the CBA and/or the bargaining process necessarily transforms the state law dispute into a claim arising under Section 301 of the LMRA. Motion at 7-8. The conclusion does not necessarily follow from the premise. Constantino insists that his claim is simply that a mileage-based compensation plan is prohibited by Maine law if it is meant to compensate anything other than driving, regardless of the contracting parties' intent. E.g., Response at 13 (emphasizing that the issue is whether the compensation plan "is legal under 26 M.R.S. § 629"). I conclude that Constantino, as "master of the complaint," *Caterpillar Inc. v. Williams*, 482 U.S. 386, 395, 398 (1987), is entitled to press that purely legal claim as a state law claim rather than a Section 301 claim, assuming the right to do so was not waived in the CBA (the next topic of discussion).

Constantino's cause of action tees up a straight-forward question of Maine law: does 26 M.R.S. § 629 prohibit compensation schemes for drivers based on total mileage driven, where drivers are known to perform activities other than driving? That controversy, as abecedarian as it is, is a question of Maine law concerning minimum employment standards. Moreover, the mere fact that Constantino is party to a CBA cannot be cited as

cause to disadvantage his access to state minimum employment standards. *See Livadas v. Bradshaw*, 512 U.S. 107, 117-18 (1994).[5] Also, importantly, Constantino has not alleged a violation of the CBA's compensation requirements. Constantino claims that regardless of what the parties to the collective bargaining process contemplated or understood, the substantive agreement they finally arrived at is prohibited by Maine law. So stated, the claim evades being "treated as a § 301 claim … or dismissed as pre-empted by federal labor contract law." *Lueck*, 471 U.S. at 220. Consequently, there is nothing improper in having the state law claim proceed to judgment. *See*, *e.g.*, *Beckwith v. United Parcel Serv., Inc.*, 889 F.2d 344, 347 (1st Cir. 1989) (holding that s 629's prohibition against certain payroll deductions was not merits-preempted by the NLRA).

That does not mean the claim has merit. It simply means Constantino has pressed a state law claim that is not completely preempted by the LMRA.

"But what about the fact question involving the intent of the contracting parties?" you might well ask. To be sure, that question is material to the merits of the state law claim. However, the arbitrator has already answered that question in binding arbitration, and therefore a court need only consult her answer; it need not find any facts to interpret the parties' intent on its own.

C. **Arbitral Award as Final and Binding**

---

[5] In *Livadas v. Bradshaw*, the Supreme Court explained that "it is the legal character of a claim, as 'independent' of rights under the collective-bargaining agreement, *Lueck*, 471 U.S. at 213 (and not whether a grievance arising from 'precisely the same set of facts' could be pursued, *Lingle,* 486 U.S. at 410) that decides whether a state cause of action may go forward." 512 U.S. 107, 123–24 (1994) (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985), and *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988)).

The next question is whether the parties to the CBA agreed to address even this state law wage dispute in final, binding arbitration. Shaw's argues Constantino's access to a judicial forum is foreclosed because his claim has already been resolved in arbitration. Motion at 11. The argument is based, in part, on the notion that Constantino's claim is not really a state law claim at all, but instead arises under Section 301 of the LMRA. *Id*. at 11-12. As explained above, that is not the claim Constantino asserts here and the argument is, consequently, beside the point.

The sockdolager, if there is one, would have to come in the form of a mandatory and binding arbitration provision in the CBA that encompasses any and all claims for wages, assuming the CBA also authorized the arbitrator to resolve rights established in Maine substantive law. *See Livadas*, 512 U.S. at 125. If that is demonstrated, then, yes, Constantino's state law claim must fall in the interest of preserving the rights and responsibilities of parties engaged in collective bargaining.

> [A] collective bargaining agreement is more than just a contract; it is "an effort to erect a system of industrial self-government." [*United Steelworkers v Warrior & Gulf Navigation Co*., 363 U.S. 574, 580 (1960)]; *see also California v. Taylor*, 353 U.S. 553, 565–66, 77 (1957). A CBA sets forth "a generalized code to govern ... the whole employment relationship," including situations "which the draftsmen [could not] wholly anticipate." [*Warrior & Gulf*], 363 U.S. at 578–79. Accordingly, CBA dispute resolution is itself a part of a "continuous collective bargaining process," *United Steelworkers v. Enter. Wheel & Car Corp.,* 363 U.S. 593, 596 (1960)—"a vehicle by which meaning and content are given" to the labor agreement, [*Warrior & Gulf*], 363 U.S. at 581. To set aside the parties' grievance and arbitration process is to undo an integral part of the workplace self-governance scheme. *Id*. at 578.

*Alaska Airlines Inc. v. Schurke*, 898 F.3d 904, 918 (9th Cir. 2018) (en banc) (some citation omitted).

What Shaw's needs to demonstrate to bar this action is evidence that the parties clearly and unmistakably agreed that a state law claim of this kind would be subject to mandatory and binding arbitration. *Livadas*, 512 U.S. at 125; *see also*, *cf. Emmanuel v. Handy Techs., Inc.*, --- F.3d ---, No. 20-1378, 2021 WL 1084688, at *7 (1st Cir. Mar. 22, 2021). All that Shaw's presently offers on this score is that "Plaintiff … filed a grievance regarding these matters [and] continued the grievance process set forth in Article 4 [of the CBA] which [process] concluded in an appeal to an AAA arbitrator [whose award] is binding and final …." Motion at 11.

A reading of two sections of Article 4 reveals otherwise:

> (a) Should there be any disputes or differences between the Employer and the Union, or between the Employer and any of its employees, such grievance shall … [the Article goes on to outline the grievance and arbitration process].
> . . . .
> (h) The decision of the impartial arbitrator shall be final and binding, and shall be rendered within thirty (30) days. <u>However, it is agreed that the arbitrator shall be bound by the terms of this Agreement and shall have no authority whatsoever to modify the terms of this Agreement</u>. . . . .
> . . . .
> (j) <u>The authority of the arbitrator is expressly limited to deciding if a violation of the Agreement has occurred and what the remedy shall be</u>.

The underlined passages reveal the arbitrator was not authorized to grant any relief consistent with Constantino's basic contention regarding Maine law.

In conformity with Article 4(a) of the CBA, Constantino went through the required grievance and arbitration process, as was required of him, "at least initially." *Cavallaro v. UMass Mem'l Healthcare, Inc.*, 678 F.3d 1, 7 (1st Cir. 2012). Although the arbitrator purported to resolve the state law controversy in her arbitration award, Motion Exhibit A

13

at 1 & 19-20, Article 4 did not empower the arbitrator to provide any relief under state law if such relief would be inconsistent with the CBA. Merits preemption is not available to Shaw's under Article 4 precisely because merits relief was not available to Constantino in the arbitral forum. Because subsection (j) of Article 4 did not empower the arbitrator to accept a legal theory at odds with the terms of the CBA, it does not bar this later proceeding concerning rights purportedly in conflict with the CBA.

### D.  FAAAA Preemption

Like a child intent on cleaning her plate, Shaw's left the best morsel for last. Shaw's argues the state law claim is preempted by the Federal Aviation Administration Authorization Act of 1994. Motion at 13. The FAAAA states: "[A] State . . . may not enact or enforce a law . . . related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). FAAAA preemption is readily found when a state law intrudes upon the relationship between a carrier and its customers, but preemption is a bit tougher to digest when the law intrudes on the employment relationship between a carrier and its workforce. *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1054 (7th Cir. 2016). Still, state regulation of the employer-employee relationship can trigger FAAAA preemption if it has a significant impact on prices, routes, and/or services with respect to the transportation of property. *Massachusetts Delivery Ass'n v. Coakley*, 769 F.3d 11, 21-22 (1st Cir. 2014)

For reasons that follow, Constantino's legal theory that 26 M.R.S. § 629 has something to say about the way drivers are compensated relates to transportation and would likely impact the price, route, or service of a motor carrier, though the significance of the

14

impacts is less clear. It does not matter here that § 629, in the abstract, would not ordinarily be preempted given the breadth of its application to all manner of employers in general. What matters here is that Constantino is attempting to take a very broad and general statute and graft onto it a very transportation-specific prohibition. As Judge Boudin once observed, "it is hard to imagine that Congress would have been happier if, absent detailed guidelines or a law targeting carriers, . . . states . . . simply let the jury condemn the same carrier conduct by applying broader statutory terms (e.g., 'unfair' competition or 'deceptive' practices)." *DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81, 87 (1st Cir. 2011) (quoting *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 227 (1995))."

### 1. Contantino's Cause Proposes a Law Respecting Transportation

A state law relates to transportation when it intrudes on the "transportation" focus of the FAAAA, which includes services related to the movement of property, such as "arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property." 49 U.S.C. § 13102(23).

Through his complaint, Constantino asks a court to interpret Maine law in a way that will prohibit employers of drivers from using a mileage rate to compensate any non-driving tasks associated with their transportation work. Constantino describes a class of drivers "tasked with delivering goods," FACAC ¶ 2, whose work includes "making routine and required inspections on the trucks," *id.* ¶ 4, checking pallet tags, and arranging pallets, *id.* ¶ 15. His proposed class is exclusive to drivers, *id.* ¶ 26, whom he describes as being employed to "drive merchandise" and "deliver merchandise," and "shuffle loads and

15

equipment between distribution centers as needed," *id.* ¶ 13.

The activities described in Constantino's complaint are all activities undertaken in respect to "transportation" because they all involve the transit of property. (Who else but transportation drivers would such a law impact?) A state law that would mandate that drivers be compensated in one manner or another clearly relates to transportation. *Dan's City Used Cars*, *Inc. v. Pelkey*, 569 U.S. 251 (2013); *Massachusetts Delivery Ass'n v. Coakley*, 769 F.3d 11, 22-23 (1st Cir. 2014).

### 2. Constantino's Cause Also Relates to Price and Service

A state law relates to price, route, or service if it expressly references or significantly impacts a carrier's prices, routes, or services. *Massachusetts Delivery Ass'n*, 769 F.3d 11; 49 U.S.C. § 14501(c)(1). FAAAA preemption may occur when a state law would have only an indirect effect on rates, routes, or services, provided the effect is significant. *Schwann v. FedEx Ground Package Sys.*, *Inc.*, 813 F.3d 429, 436 (1st Cir. 2016).

Not unlike the scenario at issue in *Schwann*, here the proposed remedy would impact Shaw's interest in a driver-compensation plan that provides drivers with an incentive to perform efficiently certain activities ancillary to product delivery to keep delivery costs low. 813 F.3d at 439. The proposed remedy Constantino would have a court award under § 629 therefore relates, minimally, to rates and/or services. Conceivably, it might also impact routes.

### 3. Are the Impacts Significant?

Constantino's proposed driver-specific/ancillary-work interpretation of 26 M.R.S. 629, if adopted, could well "run[] counter to Congress's purpose to avoid 'a patchwork of

16

state service-determining laws, rules, and regulations' that it determined were better left to the competitive marketplace." *Schwann*, 813 F.3d at 438 (quoting *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 373 (2008)). Deciding that issue depends on the circumstances, which circumstances will relate to the direct versus indirect nature of any impacts as well as the overall significance of any impacts. Even significant indirect impacts call for preemption, though tangential and tenuous relationships do not. *Schwann*, 813 F.3d at 436. If the case falls in between these categories, line drawing can get difficult. *Id.* at 437; *DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81, 86 (1st Cir. 2011).

In *Massachusetts Delivery*, the First Circuit overturned a summary judgment ruling that a Massachusetts law governing the distinction between independent contractors and employees was of general application only and could not justify FAAAA preemption as applied to a carrier who relied on independent couriers to deliver its products and services. 769 F.3d at 14-15. The Court remanded the case to the district court "to determine, consistent with the principles elucidated in [its] opinion, whether [the law] satisfies the broad preemption test based on a review of the full record." *Massachusetts Delivery*, 769 F.3d at 23. Following remand, the District Court granted summary judgment based on its FAAAA-preemption findings and the First Circuit affirmed. *Massachusetts Delivery Ass'n v. Healey*, 821 F.3d 187, 190 (1st Cir. 2016). In the interim, the First Circuit issued its opinion in *Schwann v. FedEx Ground Package System*, to like result and similarly based on a summary judgment record. 813 F.3d 429, 433 (1st Cir. 2016).

At present, this case lacks a record concerning impacts on prices, routes, or services. I am not inclined to resolve the issue without a record.

**E.      Fed. R. Civ. P. 12(b)(6) (Epilogue)**

Shaw's states in its Motion that Constantino has failed to state a claim. Motion at 4. However, none of the headings in its Motion present the basic underlying question whether Constantino has asserted a plausible basis for relief under Maine law.

Frankly, that is a concern here. The statute in question prohibits "unfair agreements." 26 M.R.S. § 629. One kind of unfair agreement – the one Constantino relies on – is an agreement that requires an employee to work "without monetary compensation." *Id.* § 629(1).

Constantino bases this class action entirely on those gossamer statutory strands. Section 629 says naught about <u>driver</u> or <u>mileage-based</u> compensation. Indeed, § 629 does not even include the word hour or hourly, let alone expressly compel payment of an hourly wage. Section 629 also does not prohibit paying different drivers the same amount for different length shifts or different amounts for the same shifts. Agreements that produce day-to-day pay inequities among employees are neither addressed nor prohibited in this statute. As far as I can tell, the Maine Legislature has not prohibited the law of averages for employee compensation calculated by means other than a fixed hourly rate. If it had, then one would think mileage-based compensation would be strictly forbidden, even if there were no non-driving tasks, because it would be a rare occasion in which two drivers would ever drive the same distance in the same time.

In any event, the matter survives the instant motion.

## CONCLUSION

Defendant's [Original] Motion to Dismiss (ECF No. 8) is **DISMISSED AS MOOT**.

Defendant's Motion to Dismiss First Amended Complaint (ECF No. 11) is **DENIED**.

Given the need to resolve the FAAAA preemption issue, the parties are hereby ordered to meet and confer so that they can present the Magistrate Judge with a suitable request to modify the schedule along those lines.

**SO ORDERED.**

Dated this 9th day of April, 2021.

                                          /s/ Lance E. Walker  
                                  UNITED STATES DISTRICT JUDGE